## CIRCUIT COURT OF SMYTH COUNTY

Thomas Copenhaver, Executor, etc.

    v.

Katharine Van Meier

### April 29, 1988

By JUDGE CHARLES H. SMITH, JR.

This matter is before the court on a motion for declaratory judgment filed by the plaintiff pursuant to Section 8.01-184 of the Code. The matter has been presented to the court on a "Stipulation of Facts" made by counsel and filed herein. Counsel have further made oral argument to the court and have submitted memoranda in support of their positions. Having reviewed the pleadings and all exhibits and considered same along with the memoranda and argument of counsel, the court finds as follows.

A complete recitation of the stipulated facts will not be made as the same is incorporated herein by reference. However, a brief summary of the salient points is here made for purposes of this opinion.

The plaintiff's decedent, Eleanor Copenhaver Anderson, died testate in Smyth County, Virginia, on September 12, 1985. Her will, dated August 3, 1983, appointed the plaintiff herein as executor and was duly probated in the Smyth County Circuit Court Clerk's Office on the 17th of September, 1985. The decedent was survived by her sister, the defendant herein, three nephews and two nieces.

The decedent made numerous specific bequests in her will. She also made detailed arrangements for the establishment of a trust for the preservation of the

literary property of her deceased husband, Sherwood Anderson. The decedent then made a residuary devise, the bone of contention herein, which provided as follows:

> The remainder of my estate consists of various *savings certificates, accounts* and *bonds.* (Emphasis supplied.) Some of them have been set up by me as joint certificates naming members of my family as co-owners or payable on death to them. I have, however, kept possession of these joint account documents on the advice that by so doing I retain ownership of the same. I do hereby declare them to be my sole property . . . Consequently, I give, devise and bequeath all of the rest, residue and remainder of my property of whatever kind and wherever situated I give to my nephew, Thomas E. Copenhaver, so that he will have funds sufficient . . .

The decedent commenced purchasing shares of corporate stock in Dominion Bankshares Corporation in 1972 and at the time of her death owned some 2,831 shares. She had the shares issued in the joint names of herself and her sister, the defendant, as joint tenants with the right of survivorship. In 1983 she commenced a stock dividend reinvestment program with Dominion and the stock issued as a result thereof was also placed in their joint names with survivorship. The plaintiff contends that all of these shares of stock belong to the estate and should pass to him as residuary legatee. The defendant contends that the registration of the stock in such manner created an irrevocable, *inter vivos* gift and should pass to her as survivor.

The only issue to be resolved, of course, is the ownership of these shares of common stock. On July 23, 1987, after oral argument, I wrote to counsel requesting your views as to whether § 13.1-435 of the Code might not be dispositive of this issue. That Code section provides as follows:

> Whenever a security issued by a corporation organized under the laws of this state shall be registered in the names of two or more persons

> as joint tenants with the right of survivorship
> . . . and one such person dies, such corporation
> and any transfer agent of such corporation shall,
> upon receipt of evidence of death, be entitled
> to treat the survivor or survivors as the owner
> or owners of such security for all purposes
> and to cause such security to be registered
> in the name of such survivor or survivors regard-
> less of any claim of right through the decedent
> or by his personal representative . . .

Counsel obviously took opposing viewpoints. Thus, the memoranda were requested.

Plaintiff relies heavily upon the case of *Wrenn v. Daniels*, 200 Va. 419 (1958). That case involved a father, who, after the death of his wife and during a period of declining health, opened various accounts and purchased various stocks in his name and that of his son as joint tenants with right of survivorship. The funds placed in the accounts and those used to purchase the stocks all belonged to the father. The stock certificates were placed in a safe deposit box in their joint names and the son had a key to the box. The son never withdrew any funds except on express direction of his father. The father had a stroke and was paralyzed. Significantly, these joint-survivorship accounts and securities notwithstanding, the father then executed a power of attorney to the son who used same to generally manage his affairs. The evidence was that the son and his wife were most attentive to the father both before and during his illness. There was substantial evidence in the case both from the daughter and from several friends of the father that it was not his intent to make a gift of these accounts or securities to the son and that the same was only done for convenience purposes so that the son could use these assets to take care of the father should anything happen to him. The Supreme Court held that the transfers were, indeed, made for convenience purposes and were not intended to transfer the beneficial interest to the son. The court stated:

> In order to make a valid gift *inter vivos*,
> the donor must intend at the time to make a

gift, and there must be such actual or constructive delivery as divests the donor of all dominion and control over the property and invests the donee therewith. . . .

*Absent controlling statutory provision* (emphasis supplied) ownership of a joint account must be determined by common law principles, and in so doing the intention of the depositor is a controlling factor.

Where the *deposit* (emphasis supplied) by a person is in the name of himself and another, not his wife, the presumption is that it was done for the purposes of convenience only, and this presumption is strengthened by the illness or infirmity of the depositor. . . .

Absent other evidence, where a *security* (emphasis supplied) on its face clearly creates a survivorship right in a person who did not pay for the right so created, the securities form will be *prima facie* evidence that an intent to make a transfer of that survivorship interest or right existed at the time the transfer was made.

For reasons discussed below, I am of the opinion that the *Wrenn* case is distinguishable from the case at bar and that this case is more in line with the case of *Robinson v. Lee*, 205 Va. 363 (1964), cited by the defendant in support of her position.

The *Robinson* case involved the ownership of certain stock certificates which, although purchased by one sister from funds received from the estate of her brother, were issued to that sister and another sister as joint tenants with the right of survivorship. The evidence revealed that the testatrix controlled the dividends on the stock during her life, sometimes depositing them in their joint account and sometimes in other accounts. A contest ensued between the sister named as co-owner of the stock and the residual beneficiaries of the will. The Supreme Court affirmed the ruling of the trial court that the stock belonged to the sister named as co-owner as survivor stating:

In *Wrenn v. Daniels*, 200 Va. 419, we affirmed the holding of the trial court that the shares of stock in that case, issued to a father and son as joint tenants with right of survivorship and not as tenants in common, were assets of the estate of the father and did not become the property of the son at the father's death. That, however, was on evidence which we said was ample to sustain the chancellor's conclusions that the certificates of stock were so issued for the use, benefit and convenience of the father and without any intention of making any gift thereof to the son. In that case counsel on both sides agreed that the following was a correct statement of the law:

In the absence of other evidence, where a security on its face clearly creates a survivorship right in a person who did not pay for the right so created, the security's form will be *prima facie* evidence that an intent to make a transfer of that survivorship interest or right existed at the time the transfer was made.

We tacitly approved that statement in the opinion in that case and we now specifically approve it.

As correctly pointed out by counsel for the defendant, the issues in *Wrenn* were whether or not the father intended to make a gift at the time he transferred the stock and whether the *prima facie* presumption arising from the language on the stock certificate was overcome by the evidence as to why he had created the joint tenancy. It had nothing to do with delivery.

Accordingly, in the instant case plaintiff has the burden of overcoming the *prima facie* presumption created from the language on the stock certificates. While I can find no case directly so stating, I am of opinion that the standard of proof in such case is by clear and convincing evidence. (e.g. *see* Multiple-Party Accounts Act, Sections 6.1-125.1 *et seq.* of the Code, wherein such standard is required to refute the presumption of ownership in the survivor with respect to joint banking accounts.) In any event, the plaintiff contends that his evidence is

sufficient to refute the presumption in this case and, indeed, is "much stronger" than in the *Wrenn* case. In support thereof the plaintiff first contends that this position is supported by the fact that the decedent kept the stock certificates in her safe deposit box. There was no evidence that the defendant had access to said safe deposit box. Again, I do not think it significant that delivery was not made of the stock certificates to the defendant. That fact was not determinative of the issue in the *Wrenn* case and neither should it be in this case. As counsel for the defendant correctly points out, "With the vast numbers of persons who must own assets as joint tenants with right of survivorship, a requirement that the stock be somehow in their joint possession or, as plaintiff seems to suggest, in the possession of the surviving joint tenant, would interject a virtually insurmountable, wholly irrational, and totally unnecessary obstacle to joint tenancy." Further, while there is no evidence that the defendant had access to the safe deposit box, neither is there evidence that she did not have. Assuming, as plaintiff suggests, the defendant did not have such access, this would only serve to further negate the theory of a transfer for convenience which, as in *Wrenn*, would have contemplated such access.

Next, the plaintiff contends that the very language used by the decedent in her will is sufficient to negate a donative intent. The language referred to must be that which is found in the decedent's will in the section headed "Section C: Remainder of My Estate." It provides as follows:

> The remainder of my estate consists of various savings certificates, accounts and bonds. Some of them have been set up by me as joint certificates naming members of my family as co-owners or payable on death to them. I have, however, kept possession of these joint account documents on the advice that by so doing I retain ownership of the same. I do hereby declare them to be my sole property. . . .

The decedent was obviously a lady of considerable business acumen, had amassed a considerable estate at the time of her death, was aware of her assets, knew the natural

objects of her bounty and made provisions for them in her will. Her will has been duly probated and there has been no contest concerning her testamentary capacity. Yet, nowhere in this elaborate document is any mention made of this Dominion Bank stock although it obviously comprised a considerable portion of her estate. Shares of common stock in a corporation obviously do not fall within the category of things mentioned by the decedent as comprising her residuary estate, to wit "various savings certificates, accounts and bonds." Contrary to plaintiff's contention, the decedent certainly knew what stock was and made reference in the same paragraph to a previous disposition she had made of some stock in a family corporation. It is a rule of construction that a testator is presumed to know the legal effect of words used in one instance and omitted in another. (20 Michie's Jurisprudence, *Wills*, Sec. 90) The language used in the will *purporting* to retain ownership in these savings certificates, accounts and bonds has no application to the stock in question.

Finally, the plaintiff contends that certain letters of the decedent and the defendant clearly indicate that both knew the stocks belonged to the decedent. If there are such letters, they have not been made exhibits to this proceeding. The only letter of the decedent is one dated "April" written to the defendant. The only portion of that letter relevant to this inquiry reads as follows:

> Re those things in safety box mostly loose -- guess you and R would get -- Did I say I had made you co-owner of the Dominion Bank stock -- (not in those envelopes)!

That language obviously does nothing to advance the plaintiff's claim. There is nothing anywhere to suggest that this was done as a convenience or with anything other than donative intent. The decedent was in one state and the defendant in another. They apparently saw each other infrequently. There is no indication that the decedent was fearful of any physical or mental incapacity. Had she had need of a transfer for convenience, she certainly had assets with more liquidity, and had other persons as closely related and more conveniently located that she might have named. There is no evidence in this case

to suggest a relationship between the decedent and the defendant that even closely approximates that of the father and son in *Wrenn*.

The only other letters are one from the plaintiff to the defendant dated January 28, 1985, and two, in response thereto, from the defendant to the plaintiff, the first dated February 3, 1985, and the second dated February 5, 1985. These letters all precede Mrs. Anderson's death and postdate her will. Yet, here is nothing to indicate that plaintiff's letter was written for or under the direction of the decedent. Indeed, the "we" used in the letter seems to refer to one Bill Ford who was apparently some kind of financial adviser. The letter indicates that plaintiff was aware that the defendant had an ownership interest in the stock. He states:

> The stock was put in a joint tenant account with your name . . . However, she cannot sell without your power of attorney or authority.

If this was only a revocable *inter vivos* transfer for convenience as suggested by the plaintiff, it is interesting that the *decedent* took no personal action to revoke this gift, while living, at the very time she was allegedly trying to sell the stock.

Contrary to plaintiff's contention, the responses to this letter made by the defendant indicate an understanding of her ownership interest in the stock on the one hand and an acknowledgment of the decedent's ownership interest on the other. The letters are ambiguous and irreconcilable. In any event, it is not the intent or understanding of the donee that is controlling, only that of the donor.

Nor is the court convinced by the argument that the stock should pass under the terms of the will in order to give full effect to the intention of the decedent. As stated above, there is absolutely no mention made of anything resembling this stock in the will. If, as plaintiff contends, the letter written by the decedent postdates the will, this would only serve to strengthen the position that the stock was to pass to the defendant as survivor. Were this not the case there was surely no reason for the decedent to mention having made the defendant

co-owner of the stock in her letter, since, by plaintiff's interpretation of the terms of the residuary clause in her will, she had already made a contrary disposition of this asset. The decedent knew, when she wrote the letter, that she had a will and, presumably, knew what her assets were and what disposition she had made thereof.

When I wrote my July 23, 1987, letter to counsel I was more or less convinced that § 13.1-435 of the Code was dispositive of the issue herein stated. I suppose I was likening this statute to the Multiple-Party Accounts Act mentioned above. However, there is merit to plaintiff's contention that this statute is a protective one for corporations who might, in good faith, unwittingly make transfers of stock to the wrong party. In any event, the applicability of this statute notwithstanding, for the reasons stated above I am of the opinion that the issue of ownership of this stock must be resolved in favor of the defendant. Also, as stated above, I am of the opinion that the burden on one to overcome the *prima facie* presumption arising from the language on the stock certificates must be by clear and convincing evidence. In this case I do not believe the plaintiff has borne that burden by even a preponderance of the evidence.